JAMES BASS, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. SOUTH COOK COUNTY MOSQUITO ABATEMENT DISTRICT *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—91—2226

Opinion filed October 8, 1992.

Anthony B. Bass and Aron D. Robinson, both of Holstein, Mack & Klein, of Chicago, for appellant.

Warren Lupel and Pamela J. Leichtling, both of Katz, Randall & Weinberg, of Chicago, and Jerry L. Lambert, of Stinespring, Lambert & Associates, of Flossmoor, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, James Bass, brought an action on his own behalf and on behalf of other taxpayers[1] within the South Cook County Mosquito Abatement District (the District) against the District, its trustees, and Edward J. Rosewell, Cook County Treasurer and collector of taxes (defendants). Plaintiff's complaint alleged that defendants overtaxed property owners by appropriating approximately $1.5 million more than was needed for the operation of the District, and thereby created an illegal surplus from which funds were used by the trustees for unauthorized and unnecessary items benefitting the trustees and managers of the District. The complaint sought (1) a declaration that the District violated the law by overtaxing and overappropriating monies for the use of the District; and (2) injunctions (a) compelling the District to place the surplus funds into a trust account and (b) compelling the county treasurer to deposit all monies collected for the District in a trust account; (c) restraining the collector from disbursing any monies to the District without court approval; and (d) requiring the District to refund all surplus levies to the taxpayers within the District.

Defendants filed a motion to dismiss pursuant to section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) asserting that plaintiff was not entitled to equitable relief because he had an adequate remedy at law which he failed to pursue. Defendants also asserted that the complaint failed to allege any facts to support plaintiff's assertions of excessive appropriations or taxation or any other illegal conduct.

Following a hearing, the court granted defendants' motion to dismiss, ruling that it lacked jurisdiction over the matter. This appeal followed.

■■ ■ Under the principle known as the voluntary payment doctrine, taxes voluntarily paid, even if erroneously, cannot be recovered unless recovery is authorized by statute. (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844; *Inland Real Estate Corp. v. Oak Park Trust & Savings Bank* (1983), 127 Ill. App. 3d 535, 469 N.E.2d 204.) It is also a well-settled rule that equity will not assume jurisdic-

---

[1]Although plaintiff brought suit as a class action, the suit was dismissed without class certification.

tion to grant relief where an adequate remedy at law exists. *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299; *R.D. Werner Co. v. Leyden Fire Protection District* (1980), 91 Ill. App. 3d 587, 414 N.E.2d 1169.

 Through the Revenue Act of 1939, the General Assembly has created a statutory scheme for taxpayers who wish to object to improper taxes to follow. Sections 194 and 235 provide that if a taxpayer elects to object to all or part of a real property tax, the taxpayer must pay both installments of the tax which is due under protest (Ill. Rev. Stat. 1989, ch. 120, par. 675) and file objections to the application for judgment (Ill. Rev. Stat. 1989, ch. 120, par. 716). This statutory procedure is the usual vehicle through which a taxpayer obtains relief in taxation matters and has been held to be an adequate remedy at law. (*Clarendon Associates v. Korzen*, 56 Ill. 2d 101; *Alexander v. County of Tazewell* (1989), 181 Ill. App. 3d 1070, 537 N.E.2d 1139.) The rationale for the payment-under-protest procedure is to protect the rights of the taxpayer while also ensuring that the functioning of government is not impaired by protracted delays in the collection of taxes necessary for the operation of governmental units. *Clarendon Associates v. Korzen*, 56 Ill. 2d 101; *Wolf v. Hynes* (1985), 137 Ill. App. 3d 987, 485 N.E.2d 463; *R.D. Werner Co. v. Leyden Fire Protection District* (1980), 91 Ill. App. 3d 587, 414 N.E.2d 1169.

 Although the statutory procedure is generally a taxpayer's exclusive remedy in tax cases (*Alexander v. County of Tazewell*, 181 Ill. App. 3d at 1074), there are two well-recognized exceptions under which equitable remedies are available without first following the statutory remedy. Where the tax is unauthorized by law or is levied upon exempt property, a taxpayer may seek relief by way of injunction without demonstrating an inadequate remedy at law. (*Clarendon Associates v. Korzen*, 56 Ill. 2d 101; *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833.) However, absent a recognized ground for equitable relief, a taxpayer who seeks equitable intervention prior to following the statutory procedures risks the loss of his right to a tax refund in cases where equitable relief is found unwarranted. *R.D. Werner Co. v. Leyden Fire Protection District*, 91 Ill. App. 3d at 594.

Plaintiff acknowledges that he did not avail himself of the statutory payment-under-protest procedure when he paid the tax at issue, and he does not allege that the District is not authorized to levy taxes or that the property is exempt from taxation. Relying on *Clarendon Associates v. Korzen* (56 Ill. 2d 101) and *Hoyne Savings & Loan Asso-*

*ciation v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833, plaintiff asserts, however, that the availability of equitable remedies is not limited to those two traditional exceptions. He argues that a taxpayer may obtain equitable relief before following the statutory procedure where special grounds exist, such as a fraudulently excessive assessment and the unavailability of an adequate remedy at law. He maintains that the assessment at issue was fraudulently excessive because it was used to accumulate an illegal surplus of funds, and that he lacked an adequate remedy at law because he was unaware of the alleged illegal surplus and improper expenditure of funds from it until that information was disclosed in an audit of the District's finances. Citing *Getto v. City of Chicago* (86 Ill. 2d 39), he further argues that his lack of knowledge that the taxes he paid were being used to create the surplus renders the voluntary payment doctrine inapplicable.

In *Clarendon,* a leading case on this subject, the plaintiffs-taxpayers sought an injunction restraining the collection of real estate taxes on the ground that the valuations of their properties were constructively fraudulent and void. The trial court entered an order enjoining the collection of the taxes while also ordering the plaintiffs to deposit those amounts into a trust account pending the outcome of the litigation. On interlocutory appeal, the supreme court noted that some courts had expanded the traditional limitations on equitable jurisdiction in tax cases by holding that equity may enjoin the collection of taxes where the assessment is so grossly excessive as to be constructively fraudulent. However, after an extensive review of the history of the Revenue Act and the rationale for the enactment of the statutory procedure of payment under protest, the *Clarendon* court reaffirmed the basic rule that the statute provided an adequate remedy even in cases alleging a fraudulent assessment. The court held that only when the taxpayer demonstrated that the assessment was fraudulent *and* that the legal remedy was inadequate would equity assume jurisdiction. (*Clarendon,* 56 Ill. 2d at 107.) The court reasoned that to hold otherwise, "[t]he door would thus be opened for all constructively fraudulent assessment cases to be tried in equity, thereby bypassing the statutory requirement that taxes be paid under protest." (56 Ill. 2d at 108.) The taxpayers in *Clarendon* were found not to have satisfied the burden of showing that the statutory remedy was an inadequate remedy at law, and the case was remanded for dismissal and for distribution of the taxes to the taxing bodies involved.

In *Hoyne Savings & Loan Association v. Hare* (60 Ill. 2d 84), the plaintiff-taxpayer sought an injunction restraining the collection of the 1971 taxes on a 50-acre parcel of land. Prior to entry of an order in

that case, the plaintiff brought another suit seeking the same relief for the tax year 1972. In both actions, the trial court ordered plaintiff to deposit the full amount of the taxes with the court and, in a final order, granted a refund to plaintiff of the amount found to be excessive.

On appeal, the supreme court considered the principles it had earlier enunciated in *Clarendon*, but held that under the unique circumstances presented, the taxpayer was entitled to partial equitable relief despite the existence of the statutory remedy at law because that remedy was inadequate. The factors cited by the court included that the assessed valuation of the property, which had increased more than 25 times from the previous year without any improvements having been made to the property, was grossly excessive; and that the assessment was based on the assessor's opinion that the best use of the property was commercial, despite that the property was zoned residential, and on his incorrect assumption that the property was fully improved with water and sewer services. Additional circumstances, which related to the plaintiff's failure to pursue its statutory remedy, were the extremely late date of the assessment and the subsequent publication of it; the late mailing of the tax bill; that the first actual notice the taxpayer had of the increased assessment was after the board of review had closed its books for the 1971 taxes; and that the 1973 assessment was substantially reduced by the board of review.

The *Hoyne* court found that the aggregation of all these circumstances led to "the formation of the total picture requiring equitable intervention," and affirmed the order of the trial court granting a refund of the excess taxes for 1971. (*Hoyne*, 60 Ill. 2d at 90.) However, the court held that the facts warranting equitable relief as to the 1971 taxes did not exist as to the 1972 taxes because plaintiff was aware of the assessment long before the tax bills were received but nevertheless elected not to pursue its statutory remedy. Thus, the court held that equitable relief was not available for the excessive assessment for 1972, and the order granting defendant a refund of the excess 1972 taxes was reversed.

Plaintiff asserts that the type of special circumstances discussed in *Clarendon* and found to be present in *Hoyne* also warrant equitable relief in this case. We disagree.

■ We do not believe that this case presents sufficiently compelling circumstances as are necessary, and which have been found in only a few rare cases such as *Hoyne*, to require equitable intervention. Plaintiff has paid the tax at issue and now seeks a ruling that it was excessive and an order refunding the excess amount he paid. This

is substantially the same procedure and relief which would be available under the payment-under-protest procedure of the statute. (*Clarendon v. City of Chicago*, 56 Ill. 2d at 108.) Second, in *Hoyne*, the errors resulting in the grossly excessive assessment imposed upon the individual taxpayer a substantially increased tax burden, *i.e.*, approximately $17,000, from the previous year. Although the *Hoyne* court cautioned that it was not establishing "a line of demarcation" (*Hoyne*, 60 Ill. 2d at 89) as to when an assessment will be considered grossly excessive, there are no allegations and nothing in the record before us indicating that the assessment in this case imposed upon plaintiff a tax burden at all comparable to that in *Hoyne* so as to render his legal remedy inadequate. (See *Alexander v. County of Tazewell*, 181 Ill. App. 3d at 1075; *Wolf v. Hynes*, 137 Ill. App. 3d at 990.) Also, it is significant that notwithstanding the excessiveness of the increase in *Hoyne*, the court held that equitable intervention was not available to the taxpayer for the second year of overassessment because the statute provided an adequate remedy at law which the taxpayer elected not to pursue. Thus, the taxpayer in *Hoyne* lost its right to a refund of the second year's excess taxes which had been placed on deposit with the circuit court. In our view, *Hoyne* is not supportive of plaintiff's position, and *Clarendon* countermands it.

Neither are we persuaded by plaintiff's arguments that he did not have an adequate legal remedy, and the voluntary payment doctrine is inapplicable because he lacked sufficient knowledge of the alleged overassessment at the time he paid the tax. *Getto v. City of Chicago* (86 Ill. 2d 39), on which plaintiff relies, held that invocation of the voluntary payment doctrine requires a showing that the taxpayer had knowledge of the facts upon which to frame a protest and that the payments were not made under duress or compulsion. In *Getto*, the plaintiff successfully challenged the method of calculating a municipal message tax. The tax appeared on each utility bill but was explained only as "an additional charge due to State and City taxes." The bill did not indicate the type of tax, what portion of the bill was being taxed or that a percentage of the charge was used to cover accounting costs. The court ruled that the voluntary payment doctrine did not apply both because the customers had no way of ascertaining the method of computing the message tax, and because the threat of telephone service disconnection for nonpayment of the charges amounted to compulsion.

In contrast to *Getto*, the record in the present case establishes that the real estate tax bills designate what amount of the total tax is levied for the District's operations; that the District's proposed budg-

ets were published during June, July and August each year for several years preceding this lawsuit; and that open hearings are held prior to the county board's approval of a budget. The budget lists all the expenditures of the District, including those which plaintiff asserted, in a letter to the District during the pendency of the litigation, were excessive and/or unnecessary. Thus, plaintiff's assertion that there was no way he could acquire the knowledge necessary to form a protest on the ground of an illegal accumulation of surplus funds prior to the audit is contradicted by the record. In our view plaintiff was chargeable with sufficient knowledge to form a protest because he had the means by which to discover the purportedly improper surplus. *Cf. Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 452 N.E.2d 844 (invocation of the voluntary payment doctrine does not require that the taxpayer be aware of the illegality of the tax at the time he makes payment; it is sufficient that the taxpayer had before him adequate facts upon which he could have based a contention of illegality).

Finally, the record discloses that in a letter to the county board chairman regarding the audit, the Cook County auditor opined that the amounts of the District's investments and cash on hand were unnecessarily large, and recommended, *inter alia*, that the unreserved fund balance of $1.4 million be applied toward the following year's budget. Subsequently, the District prepared an amended tax levy ordinance which implemented the auditor's recommendation and reduced the levy to $700,000 on an amended budget of approximately $2.1 million. Thus, as the trial court noted, any excessive or otherwise improper taxes which created the surplus challenged by plaintiff were used to reduce plaintiff's tax liability the following year.

We cannot say that there was a sufficient accumulation of inequities in this case, which is, essentially, one challenging the management practices of the District's operations, to conclude that plaintiff lacked an adequate remedy at law. The trial court correctly ruled that it lacked jurisdiction to exercise its powers of equitable intervention.

For the reasons stated, the order of the trial court dismissing plaintiff's action is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.